UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

VANESSA HOFFMAN
o/b/o T.J.B.,

                Plaintiff,

v.                                              1:17-CV-0450
                                                  (TWD)

COMM'R OF SOC. SEC.,

                Defendant.
_____

APPEARANCES:                                      OF COUNSEL:

VANESSA HOFFMAN
 Plaintiff, *Pro Se*
214 Partition Street
Saugerties, NY 12477

U.S. SOCIAL SECURITY ADMIN.                   SERGEI ADEN, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
 Counsel for Defendant
26 Federal Plaza - Room 3904
New York, NY 10278

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## **DECISION and ORDER**

      Currently before the Court, in this Social Security action filed by Vanessa Hoffman ("Plaintiff") on behalf of her minor son, T.J.B., against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are Plaintiff's motion for judgment on the pleadings and Defendant's motion for judgment on the pleadings. (Dkt. Nos. 11 and 12.) For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is denied and Defendant's motion for judgment on the pleadings is granted. The Commissioner's decision denying Plaintiff's disability benefits is affirmed, and Plaintiff's Complaint is dismissed.

I.      **RELEVANT BACKGROUND**

   A.      **Factual Background**

T.J.B. was born in 2005, making him six years old at the alleged onset date and nine years old at the ALJ's decision.  He was classified as a school-age child as defined in 20 C.F.R. § 416.926a(g)(2)(iv).  At the time of the administrative hearing, he was preparing to enter the fourth grade.  Plaintiff alleges T.J.B. is disabled due to attention deficit hyperactivity disorder ("ADHD") and a learning disability.

   B.      **Procedural History**

Plaintiff applied for Supplemental Security Income on behalf of T.J.B. on January 24, 2014.  Her application was initially denied on April 24, 2014, after which she timely requested a hearing before an Administrative Law Judge ("ALJ").  Plaintiff and T.J.B. appeared at a hearing before ALJ Dale Black-Pennington on July 29, 2015.  On September 3, 2015, the ALJ issued a written decision finding T.J.B. was not disabled under the Social Security Act.  (T. 11-36.)[1]  On February 15, 2017, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  (T. 1-6.)

   C.      **The ALJ's Decision**

In her decision, the ALJ made the following five findings of fact and conclusions of law. (T. 17-32.)  First, the ALJ found T.J.B. was a school-age child at the date of the application and at the date of her decision.  (T. 17.)  Second, the ALJ determined T.J.B. has not engaged in substantial gainful activity since the application filing date.  (*Id*.)  Third, the ALJ found T.J.B.'s

---

[1]     The Administrative Transcript is found at Dkt. No. 10.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

2

ADHD and asthma are severe impairments.  (*Id*.)  Fourth, the ALJ found T.J.B.'s severe impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings").  (*Id*.)  The ALJ considered Listings 112.11 for ADHD and 103.03 for asthma.  (*Id*.)  Fifth, the ALJ determined T.J.B. does not have an impairment or combination of impairments that functionally equals the severity of the Listings.  (*Id*.)  The ALJ found T.J.B. has less than marked limitations in the domains of acquiring and using information, attending and completing tasks, interacting and relating with others and health and physical well-being, and no limitations in the domains of moving about and manipulating objects and caring for himself.  (T. 25-31.)  Because T.J.B.'s impairments do not meet, equal, or functionally equal a Listing, the ALJ found he is not disabled.  (T. 31-32.)

> **D.**     **The Parties' Briefings on Their Cross-Motions**
>
> > **1.**     **Plaintiff's Motion for Judgment on the Pleadings**

Plaintiff was initially represented in this action by Peter M. Margolius, Esq.  (Dkt. No. 1.)  Mr. Margolius filed a memorandum of law on behalf of Plaintiff on October 12, 2017.  (Dkt. No. 11.)  Following Mr. Margolius' death, the Court instructed Plaintiff to advise whether she would be proceeding *pro se* or retaining new counsel to represent her and Plaintiff indicated she would proceed *pro se*.  (Dkt. Nos. 13, 14, 16.)

Plaintiff makes two arguments in support of her motion for judgment on the pleadings. (Dkt. No. 11 at 1-5.[2])  First, Plaintiff argues the ALJ's determination that T.J.B. has a less than marked limitation in the domain of acquiring and using information is not supported by the substantial evidence.  (*Id*. at 1-4.)  More specifically, Plaintiff contends the ALJ incorrectly

---

[2]     Page numbers in citations to the parties' briefs refer to the page number assigned by the Court's CM/ECF electronic filing system.

stated that none of the examining or treating sources indicated T.J.B. has any serious problems in his current intellectual functioning. (*Id.* at 3.) Plaintiff asserts consultative examiner Mena Stramenga, Ph.D., opined marked difficulties attending to, following, and understanding age-appropriate directions, which is consistent with the examination revealing impaired attention, concentration, and recent and remote memory skills. (*Id.*) Plaintiff contends consultative examiner Neil Burger, Ph.D., opined T.J.B.'s cognitive functioning appeared to be deficient and his general fund of information was limited, stating the results of the examination appeared to be consistent with psychiatric and cognitive problems and this may significantly interfere with T.J.B.'s ability to function on a daily basis. (*Id.*) In addition to the examining sources, Plaintiff notes State Agency consultants D. Bostic (pediatrics) and J. Dombrocia (psychology) assessed marked limitations in this domain. (*Id.*) Plaintiff contends these opinions are supported by T.J.B.'s school records, including the 2015-2016 Individual Education Plan ("IEP"). (*Id.* at 3-4.)

Second, Plaintiff argues the ALJ's determination that T.J.B. has a less than marked limitation in the domain of attending and completing tasks is not supported by substantial evidence. (*Id.* at 1, 4-5.) Specifically, Plaintiff asserts the ALJ's finding regarding this domain is not consistent with the opinions in the record including that of Dr. Stramenga who opined marked difficulties in completing age-appropriate tasks and whose examination revealed impaired attention and concentration. (*Id.* at 4.) Plaintiff also points to Dr. Berger's examination which revealed impaired attention and concentration and quite impaired recent and remote memory skills. (*Id.* at 4-5.)

### 2. Defendant's Motion for Judgment on the Pleadings

Defendant makes two arguments in support of her motion for judgment on the pleadings. (Dkt. No. 12 at 7-13.) First, Defendant argues Plaintiff challenges just one line in the ALJ's

analysis regarding the domain of acquiring and using information and notably does not challenge the observation that T.J.B.'s own sources did not support marked limitations in this domain.  (*Id*. at 8.)  Defendant contends the ALJ accurately and extensively recited the results of Dr. Stramenga's evaluation and explained why it was an outlier opinion.  (*Id*.)  Furthermore, Dr. Stramenga assessed average cognitive functioning and was concerned more by T.J.B.'s apparent distractibility rather than his intellectual functioning.  (*Id*. at 9.)  Defendant asserts the underlying basis for Dr. Stramenga's evaluation, distractibility as opposed to cognitive deficits, was treatable and T.J.B. was treated with medication.  (*Id*.)  Defendant also notes the ALJ observed that the relevant period was bounded by the January 24, 2014, application, meaning Dr. Stramenga's evaluation predated the relevant period by a year.  (*Id*.)

Regarding Plaintiff's reliance on Dr. Berger's opinion, Defendant contends Dr. Berger did not assess marked limitations in any area relevant to acquiring and using information and that the ALJ noted this evidence.  (*Id*.)  Defendant asserts that, even though Dr. Berger's opinion did not support the presence of marked limitations, other evidence revealed T.J.B. actually functioned at a higher level even than that assessed by Dr. Berger.  (*Id*. at 9-10.)  Defendant argues the assessments of the State Agency consultants as a whole contradict T.J.B.'s disability claim because the consultants still assessed only one marked limitation, and that the ALJ considered this evidence and explained why the conclusion of a marked limitation in the domain of acquiring and using information was contradicted by the weight of the record evidence, including the evidence from T.J.B.'s own medical and other sources.  (*Id*. at 10.)

Regarding Plaintiff's reliance on T.J.B.'s difficulty with reading and writing, Defendant indicates the issue is not whether T.J.B. was functioning to some extent below average, but rather whether he was functioning at least markedly below a child of the same age without

5

medically determinable impairments.  (*Id*.)  Defendant also argues Plaintiff's reliance on certain testing results as support for a marked limitation is misplaced because the school psychologist who administered these tests concluded T.J.B. functioned in the low to below average range in some areas, but such results do not reflect overall marked limitations, *i.e.*, functioning at least two standard deviations below the mean across the domain of acquiring and using information as a whole.  (*Id*. at 10-11.)

Second, Defendant contends the ALJ likewise extensively considered and explained why the evidence relevant to the domain of attending and completing tasks did not support the presence of a marked limitation.  (*Id*. at 11-12.)  Regarding Plaintiff's reliance on Dr. Stramenga's opinion, Defendant reiterates this evaluation was an outlier that predated the relevant period at issue by a year and notes that the State Agency consultants who reviewed his report did not assess a marked limitation in this domain, even without the benefit of subsequent evidence revealing T.J.B. had improved functioning.  (*Id*. at 12.)  Regarding Plaintiff's reliance on Dr. Burger's opinion, Defendant contends there is no plausible interpretation that could even arguably support marked limitations.  (*Id*.)  Defendant argues nothing in Plaintiff's arguments show any error by the ALJ.  (*Id*. at 13.)

Defendant also points out the ALJ noted objective findings from T.J.B.'s own pediatrician and a school psychologist and reports from T.J.B.'s teachers failed to support marked limitations in any domain, while T.J.B. and Plaintiff's presentation at the consultative evaluations was inconsistent when compared to the longitudinal record evidence.  (*Id*. at 7-8.)

## II.     RELEVANT LEGAL STANDARD

### A.     Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).  "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of

the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."  *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

      **B.**      **Standard to Determine Disability**

An individual under the age of 18 is disabled, and thus eligible for SSI benefits, if he or she has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.  *See* 42 U.S.C. § 1382c(a)(3)(C)(i).  However, that definitional provision excludes from coverage any "individual under the age of 18 who engages in substantial gainful activity[.]" 42 U.S.C. § 1382c(a)(3)(C)(ii).

By regulation, the agency has prescribed a three-step evaluative process to be employed in determining whether a child can meet the statutory definition of disability.  20 C.F.R. § 416.924; *Kittles v. Barnhart*, 245 F. Supp. 2d 479, 487-88 (E.D.N.Y. 2003); *Ramos v. Barnhart*, 02-CV-3127 (LAP)(GWG), 2003 WL 21032012, at *7 (S.D.N.Y. May 6, 2003).

The first step of the test, which bears some similarity to the familiar five-step analysis employed in adult disability cases, requires a determination of whether the child has engaged in substantial gainful activity.  *See* 20 C.F.R. § 416.924(b); *Kittles*, 245 F. Supp. 2d at 488.  If so, then both statutorily and by regulation the child is ineligible for SSI benefits.  *See* 42 U.S.C. § 1382c(a)(3)(C)(ii); 20 C.F.R. § 416.924(b).

If the claimant has not engaged in substantial gainful activity, the second step of the test requires examination of whether the child suffers from one or more medically determinable impairments that, either singly or in combination, are properly regarded as severe, in that they cause more than a minimal functional limitation.  *See* 20 C.F.R. § 416.924(c); *Kittles*, 245 F. Supp. 2d at 488; *Ramos*, 2003 WL 21032012, at *7.  In essence, "a child is [disabled under the Social Security Act] if his impairment is as severe as one that would prevent an adult from working."  *Zebley v. Sullivan*, 493 U.S. 521, 529 (1990).

If the existence of a severe impairment is discerned, the agency must then determine, at the third step, whether it meets or equals a presumptively disabling condition identified in the listing of impairments set forth under 20 C.F.R. Part 404, Subpart. P., App. 1 (the "Listings").  *Id*.  Equivalence to a listing can be either medical or functional.  *See* 20 C.F.R. § 416.924(d); *Kittles*, 245 F. Supp. 2d at 488; *Ramos*, 2003 WL 21032012, at *7.  If an impairment is found to meet, or qualify as medically or functionally equivalent to, a listed disability and the twelve-month durational requirement is satisfied, the claimant will be deemed disabled.  *See* 20 C.F.R. § 416.924(d)(1); *Ramos*, 2003 WL 21032012, at *8.

Analysis of functionality is informed by consideration of how a claimant functions in six main areas referred to as "domains."  20 C.F.R. § 416.926a(b)(1); *Ramos*, 2003 WL 21032012, at *8.  The domains are described as "broad areas of functioning intended to capture all of what a child can or cannot do."  20 C.F.R. § 416.926a(b)(1).  Those domains include: (i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for self; and (vi) health and physical well-being.  *See* 20 C.F.R. § 416.926a(b)(1).

Functional equivalence is established in the event of a finding of an "extreme" limitation, meaning "more than marked," in a single domain.  20 C.F.R. § 416.926a(a); *Ramos*, 2003 WL 21032012, at *8.  An "extreme limitation" is an impairment which "interferes very seriously with [the claimant's] ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(3)(I).  Alternatively, a finding of disability is warranted if a "marked" limitation is found in any two of the listed domains.  20 C.F.R. § 416.926a(a); *Ramos*, 2003 WL 21032012, at *8.  A "marked limitation" exists when the impairment "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(2)(i).  "A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with the ability to function (based upon age-appropriate expectations) independently, appropriately, effectively, and on a sustained basis."  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00(C).

### III.   ANALYSIS

The ALJ's finding regarding functional equivalence is supported by substantial evidence.  As set forth above, a child claimant will be found to have impairments that functionally equal the Listings where he exhibits marked limitations in at least two of the enumerated domains of functioning, or one extreme limitation in any of the domains of functioning.  *Hickman ex. rel. M.A.H. v. Astrue*, 728 F. Supp. 2d 168, 176 (N.D.N.Y. 2010) (citations omitted).  The regulations define a marked limitation as "when your impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(2).  An extreme limitation is defined as "when your impairment(s) interferes very seriously with your ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(3).

Here, the ALJ determined T.J.B. has less than marked limitations in the domains of acquiring and using information, attending and completing tasks, interacting and relating with others and health, and physical well-being and no limitations in the domains of moving about and manipulating objects and caring for himself.  (T. 25-31.)  The ALJ found the statements concerning the intensity, persistence, and limiting effects of T.J.B.'s symptoms were not credible to the extent they were inconsistent with finding he did not have an impairment or combination of impairments that functionally equaled the Listings.  (T. 19.)  The ALJ noted Plaintiff's statements regarding T.J.B.'s functioning appeared to be overstated because the objective clinical findings from T.J.B.'s treating pediatrician Hasmukh C. Harde, M.D., and school psychologist Kerri L. Appelbaum did not support marked limitations in any domain, and, moreover, the teachers' reports and school records were considered the best evidence of T.J.B.'s functioning at school.  (T. 19, 209-24, 232-41, 248-67, 270-312, 331-46, 355-85.)

In making her decision, the ALJ considered the January 2013 consultative child psychiatric evaluation by Dr. Stramenga, in which Dr. Stramenga diagnosed ADHD (predominantly hyperactive, impulsive type) and opined the following:

> With regard to daily functioning, the claimant is seen as somebody who has marked difficulties attending to, following and understanding age-appropriate directions, marked difficulties completing age-appropriate tasks, and marked difficulties adequately maintaining appropriate social behavior, responding appropriately to changes in his environment, and learning in accordance to cognitive functioning.  He is seen as somebody who has moderate difficulties asking questions and requesting assistance in an age-appropriate manner.  He has mild difficulties being aware of danger and taking necessary precautions and mild to moderate difficulty interacting adequately with peers and adults.  Results of the examination appear to be consistent with psychiatric problems, and this may significantly interfere with the claimant's ability to function on a daily basis.

(T. 19-20, 349-50.)  The ALJ afforded Dr. Stramenga's opinion no weight because (a) she only examined T.J.B. on one occasion, (b) seemed to apparently rely heavily on the subjective report of symptoms and limitations provided by Plaintiff and seemed to uncritically accept as true most, if not all, of what Plaintiff reported, (c) there were good reasons for questioning the reliability of Plaintiff's subjective complaints, and (d) Dr. Stramenga did not have the benefit of reviewing the other medical reports in the record.  (T. 19-20, 347-350.)

The ALJ noted a follow-up examination with Dr. Harde in January 2014, Plaintiff reported T.J.B. had no adverse side effects from medications, was doing well in school, had no complaints from home or school, slept okay, and had a good appetite and no bedwetting.  (T. 20, 270-71.)  At that visit, Dr. Harde noted T.J.B. appeared reasonably focused.  (T. 270.)

The ALJ also considered the April 2014 consultative child psychiatric evaluation by Dr. Berger which included a child intelligence evaluation indicating a Full Scale IQ of 56, placing T.J.B. in the deficient range of functioning.  (T. 21-22, 317-26.)  The ALJ noted Dr. Berger reported T.J.B.'s intellectual disability was on a mild level as he exhibited strength in his Verbal Comprehension IQ score of 71.  (T. 21, 324.)  Dr. Burger diagnosed mild intellectual disability, ADHD, oppositional defiant disorder, and enuresis and opined the following:

> The claimant can [r]espond appropriate to changes in the environment, ask questions and request assistance in an age appropriate manner, be aware of danger, and take needed precautions.  He has moderate limitations on his ability to attend to, follow, and understand age appropriate directions, complete age appropriate tasks, and adequately maintain appropriate social behavior.  He has moderate limitations in his ability to learn in accordance to cognitive functioning.  Marked limitations in his ability to interact adequately with peers and adults. Results of the examination appear to be consistent with psychiatric and cognitive problems.  This may significantly interfere with the claimant's ability to function on a daily basis.

(T. 320, 325.)  The ALJ afforded Dr. Berger's opinion partial weight because his IQ testing results were not consistent with subsequent school records administered within the same month showing significantly higher intellectual functioning.  (T. 21-22, 317-26.)  The ALJ noted Dr. Berger's opinion that T.J.B. has marked limitations in his ability to interact appropriately with peers was afforded no weight because it was not consistent with the overall medical evidence of record, while the remainder of his opinion regarding no-to-moderate limitations was supported by other evidence and afforded some weight.  (T. 21-22, 317-26.)

      The ALJ afforded great weight to the May 2014 conclusions of school psychologist Ms. Appelbaum indicating T.J.B. possesses an average overall cognitive ability with memory composites in the average-to-high range and her recommendation that T.J.B. receive integrated co-teaching services for English and Language Arts and Mathematics with in-school counseling to address social skills.  (T. 22-23, 248-67.)  The ALJ afforded partial weight to the State Agency medical opinions, affording great weight to their overall conclusions because these opinions were mostly supported by the available objective medical evidence, but that the conclusions regarding individual domains were not totally consistent with pertinent medical evidence.  (T. 23 70-77, 79-86.)

      Plaintiff argues the ALJ erred in failing to find marked limitations in the domains of acquiring and using information and attending and completing tasks.  (Dkt. No. 11 at 1-5.)  The Court does not find these arguments persuasive as to either domain for the following reasons.

      In finding T.J.B. has less than marked limitations in acquiring and using information and attending and completing tasks, the ALJ cited to the evidence of record.  (T. 24-26.)  The ALJ discussed evidence from a March 2013 teacher's questionnaire by first grade teacher Beth Barnes which indicated that, within the domain of acquiring and using information, T.J.B. had an

13

obvious problem in his ability to recall and apply previously learned material and to apply problem-solving skills in class discussions, but no serious or very serious problems. (T. 24, 209-24.) The ALJ also noted Ms. Barnes observed that T.J.B. did have one serious problem within the domain of attending and completing tasks—working at a reasonable pace/finishing on time—but he did not have any other serious or very serious problems in this domain. (T. 26, 215.)

In her analysis of these two domains, the ALJ also considered the findings of consultative examiners Drs. Stramenga and Berger, the evaluation by school psychologist Ms. Appelbaum, the opinions of the State Agency consultants, treatment notes from pediatrician Dr. Harde, function reports completed by Plaintiff, and T.J.B.'s own testimony. (T. 24-26, 62-64, 70-77, 79-86, 139-50, 205-06, 248-67, 317-26, 347-50, 355-72.)

Specifically, the ALJ noted T.J.B.'s IEP indicated a classification of "other health impairment" with a diagnosis of ADHD. (T. 24, 248.) He was described as making good academic progress, loving to read, and volunteering often with up-and-down behavior, but currently doing well. (T. 248.) He enjoyed science and topics about the outdoors. (*Id*.) His mother reported medications were working effectively. (*Id*.) He was reading below grade level and struggled with writing and his math concepts needed to be taught a few times before he was able to grasp the concept. (*Id*.) However, once he understood the concept, he was able to retain it. (*Id*.) His IEP allowed integrated co-teaching services for math and English and he attended psychological counseling services in a small group once a week for 30 minutes. (*Id*.) The ALJ also noted in-school testing showed a Verbal Comprehension IQ score of 108, a Processing Speed IQ score of 88, and a Full Scale IQ score of 102, placing him in the average of intellectual functioning. (T. 266-67.) School psychologist Dr. Appelbaum concluded he possessed an average overall cognitive ability with memory composites in the average-to-high-average range

14

and recommended integrated co-teaching services for English-Language Arts and mathematics. (T. 258-62.)

The ALJ noted Dr. Stramenga's report that although T.J.B. was hyperactive throughout the January 2013 examination, he was cooperative, he related in an age-appropriate manner, his cognitive functioning appeared to be in the average range, and his insight and judgment was age-appropriate.  (T. 24-26, 347-50.)  The ALJ also cited Dr. Berger's report indicating T.J.B. had restless motor behavior, but was cooperative with an age-appropriate manner of relating, normal posture, appropriate eye contact, intelligible and clear speech, full range affect, euthymic mood, and coherent and goal-directed thought process.  (T. 24-26, 317-26.)

The ALJ cited pediatrician records indicating T.J.B. was doing fine in school with no side effects, no behavioral problems at home or school and, although he had problems sleeping, medication helped.  (T. 24-26, 29, 355-85.)  The ALJ contrasted these records with Plaintiff's report that T.J.B. had not been taking any medications throughout the summer and was doing poorly in school, not focusing or following directions at home or school, was very emotional, and was wetting the bed.  (T. 24-26, 45-47.)  Dr. Harde noted he re-prescribed ADD ("attention deficit disorder") medication and recommended T.J.B. take it year-round.  (T. 24-26, 373-85.)  A subsequent treatment note indicated T.J.B. was doing better in school with no behavioral issues and his grades were above 93.  (T. 376.)

The ALJ also noted none of the examining or treating sources indicated T.J.B. had any serious problems in his current intellectual functioning; there was no evidence of any significant speech or language delays and T.J.B. was able to answer all questions without any difficulties at the hearing and was 100 percent intelligible.  (T. 24-26.)  The ALJ also took note of (a) Plaintiff's report that T.J.B. needed some assistance and reminders to complete tasks at home,

15

however he was otherwise able to brush his teeth, comb his hair, wash by himself, eat by himself, help perform chores, and get to school on time, (b) Plaintiff's report that T.J.B. had limited ability to pay attention and stick to a task, finish things he started, or complete chores most of the time, however he was able to complete his homework and work on arts and crafts projects, and (c) T.J.B.'s apparent ability to sustain concentration long enough to watch television, play video games, and use a laptop computer.  (T. 24-26, 139-50, 205-06.)

The ALJ concluded the State Agency medical opinions that T.J.B. had none-to-marked limitations in the domain of acquiring and using information were totally inconsistent with the objective medical evidence and reports of his functioning.  (T. 24-25, 70-77, 87-92.)  The ALJ also concluded the State Agency medical opinions that T.J.B. had less than marked limitation in attending and completing tasks were consistent with the objective evidence and reports of T.J.B.'s functioning.  (T. 26, 70-77, 87-92.)

Plaintiff contends the opinions of Drs. Stramenga and Berger directly contradict the ALJ's statement that none of the examining or treating sources indicated T.J.B. has any serious problems in his current intellectual functioning.  (Dkt. No. 11 at 3; T. 24.)  While this may be a misstatement on the part of the ALJ, the Court finds any error by the ALJ in making this statement to be "harmless as it would not have changed the outcome of the case." *Newberry v. Comm'r of Soc. Sec.*, 14-CV-0880 (TJM/TWD), 2015 WL 5257130, at *8 (N.D.N.Y. Sept. 9, 2015).  It is clear from the ALJ's decision and her explanation for the weight she afforded to various opinions of record that she was aware of the consultative examiners' opinions regarding Plaintiff's limitations and properly considered them in making her findings.  (T. 19-23.)  As Defendant argues, the ALJ properly considered the opinions of record and explained the weight

given to each of them, including her reliance on the objective clinical findings of T.J.B.'s treating pediatrician and school psychologist Ms. Appelbaum. (Dkt. No. 12 at 7-13; T. 19-23.)

Further, while the consultative opinions do indicate T.J.B. has some limitations, they do not appear to support a finding of marked limitations in either of the two domains Plaintiff addresses in her memorandum of law, nor do they support Plaintiff's general argument that the ALJ's functional equivalency analysis is not supported by substantial evidence. (T. 317-26, 347-50.) A review of treatment notes in 2015 from Dr. Harde also supports the ALJ's analysis and her conclusions that T.J.B. was doing well on his medication, contrary to Plaintiff's various reports. (T. 355-56, 373-77.) Finally, though it does not appear to be explicitly addressed by the ALJ in her decision, a teacher's questionnaire dated March 26, 2015, from second grade teacher Cynthia Schiller, who taught T.J.B. from September 2013 to April 2014, noted a serious problem expressing ideas in written form within the domain of acquiring and using information, with none-to-obvious problems in other activities within this domain, and no ratings given for the other domains including attending and completing tasks, interacting and relating with others, and caring for himself. (T. 233-41.) A first quarter report card for the 2013-2014 school year indicated T.J.B. continued to struggle with sight word recognition and basic math facts, benefited from individual assistance from an adult to complete his work, and had not returned most homework assignments. (T. 241.) In the second quarter, he had shown improvement in his ability to focus on his work and classroom instruction, but had missed 30 of 37 homework assignments. (*Id.*)

For the reasons cited by the ALJ and argued by Defendant, the ALJ's functional equivalency finding, including her conclusions that T.J.B. has less than marked limitation in the

domains of acquiring and using information and attending and completing tasks, is supported by substantial evidence.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is **<u>DENIED</u>**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 12) is **<u>GRANTED</u>**; and it is further

**ORDERED** that Defendant's decision denying Plaintiff disability benefits is **<u>AFFIRMED</u>**, and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **<u>DISMISSED</u>**.

Dated: May 31, 2018
       Syracuse, New York

_Thérèse Wiley Dancks_
United States Magistrate Judge